# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN GREAT LAKES PORTS ASSOCIATION, *et al.*, | : <br> : <br> : |
| Plaintiffs, | : <br> : |
| v. | : Civil Action No.: 16-1019 (RC) <br> : <br> : Re Document No.: 6 |
| ADMIRAL PAUL F. ZUKUNFT, *Commandant, United States Coast Guard, et al.*, | : <br> : <br> : <br> : |
| Defendants. | : |

### MEMORANDUM & ORDER

### GRANTING THE PILOTS ASSOCIATIONS' MOTION TO INTERVENE

### I. INTRODUCTION[1]

Plaintiffs in this case are shipping companies and related associations that are affected by the costs of shipping services. *See* Compl. ¶¶ 6–14, ECF No. 1; Pls.' Resp. Mot. Intervene ("Pls.' Resp.") 1 n.1, ECF No. 10. Because Plaintiffs' vessels transit the waters of the St. Lawrence Seaway and the Great Lakes system, Plaintiffs' costs include required payments of pilotage rates to United States and Canadian pilots. *See* Compl. ¶ 19; Pls.' Resp. 1 n.1. Under the Great Lakes Pilotage Act of 1960,[2] Plaintiffs must use United States and Canadian pilots when transiting

---

[1] For purposes of deciding the pending motion to intervene, the Court presumes that Plaintiffs' factual allegations in their complaint are true. *See Forest Cty. Potawatomi Cmty. v. United States*, No. 15-0105, 2016 WL 1465324, at *1 (D.D.C. Apr. 14, 2016) (citing *SEC v. Prudential Sec. Inc.*, 136 F.3d 153, 156 n.4 (D.C. Cir. 1998)); *Wildearth Guardians v. Salazar*, 272 F.R.D. 4, 9 (D.D.C. 2010) (same).

[2] Pub. L. No. 86-555, 74 Stat. 259 (codified as amended at 46 U.S.C. §§ 9301–9308).

those waters. Compl. ¶ 19. The United States Coast Guard prescribes the relevant pilotage rates by regulation and annually reviews them. *Id.* ¶¶ 19–20.

Plaintiffs have initiated the present action against the Coast Guard and its Commandant to challenge the Coast Guard's 2016 rule on pilotage rates, which established new rate setting methodologies and resulted in rate increases. *See id.* ¶¶ 2–5, 15–16. *See generally* Great Lakes Pilotage Rates—2016 Annual Review and Changes to Methodology, 81 Fed. Reg. 11,908 (Mar. 7, 2016) (to be codified in scattered sections of 46 C.F.R.). Plaintiffs contend that the Coast Guard violated the Administrative Procedure Act ("APA")[3] in numerous ways. *See id.* ¶¶ 4, 29–83 (alleging APA violations under 5 U.S.C. § 706(2)(A), (C), (D)). As relief, Plaintiffs ask the Court to set aside the Coast Guard's final rule, to remand this case to the Coast Guard so that it may review and revise its rule, and to order the Coast Guard to "immediately" reduce its 2016 pilotage rates by 20.6 percent. *See id.* at 20–21.

Before Defendants filed their answer, three pilots associations ("Pilots Associations") filed a joint motion to intervene in support of Defendants in this case. *See* Mot. of St. Lawrence Seaway Pilots Ass'n, Lakes Pilots Ass'n, Inc., and Western Great Lakes Pilots Ass'n, LLP to Intervene Supp. Defs. ("Mot. Intervene"), ECF No. 6. The Pilots Associations are "the three pilotage associations authorized to provide pilotage services on the Great Lakes" under the Great Lakes Pilotage Act. *Id.* at 1–2; *see* 46 U.S.C. § 9304(a). Their member pilots guide foreign vessels on the Great Lakes. Mem. P. & A Supp. Mot. Intervene ("Mem. Supp. Mot. Intervene") 2, ECF No. 6-1. The Pilots Associations seek to intervene in this case by right or, alternatively, with the Court's permission. *See* Mot. Intervene 2.

---

[3] Pub. L. No. 79-404, 60 Stat. 237 (1946) (codified as amended at 5 U.S.C. §§ 551–559, 701–706).

Neither Plaintiffs nor Defendants oppose the motion to intervene. *See* Pls.' Resp. 1; Defs.' Statement of Position Regarding Pls.' Resp. Mot. Intervene ("Defs.' Statement") 1 n.1, ECF No. 12. Plaintiffs urge the Court, however, to impose conditions on the Pilots Association's participation in this case. *See* Pls.' Resp. 1–3. For the reasons that follow, the Court will grant the motion to intervene without imposing Plaintiffs' requested conditions.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 24(a),

> [o]n timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2); *see also Roane v. Leonhart*, 741 F.3d 147, 151 (D.C. Cir. 2014) ("A district court must grant a timely motion to intervene that seeks to protect an interest that might be impaired by the action and that is not adequately represented by the parties."). The D.C. Circuit has read Rule 24(a) as requiring four distinct showings before a party may intervene as a matter of right: "(1) the application to intervene must be timely; (2) the applicant must demonstrate a legally protected interest in the action; (3) the action must threaten to impair that interest; and (4) no party to the action can be an adequate representative of the applicant's interests." *Karsner v. Lothian*, 532 F.3d 876, 885 (D.C. Cir. 2008) (internal quotation marks omitted) (quoting *SEC v. Prudential Sec. Inc.*, 136 F.3d 153, 156 (D.C. Cir. 1998)). In addition, the D.C. Circuit has held that "intervenors must demonstrate Article III standing." *Deutsche Bank Nat'l Trust Co. v. FDIC*, 717 F.3d 189, 193 (D.C. Cir. 2013).[4]

---

[4] This Court has repeatedly found that "the standing inquiry is repetitive in the case of intervention as of right because an intervenor who satisfies Rule 24(a) will also have Article III

### III.  ANALYSIS

### A.  Intervention

Because neither Plaintiffs nor Defendants oppose the Pilots Associations' motion to intervene, the Court addresses the merits of the motion under the D.C. Circuit's four-prong test only briefly. With respect to the first requirement, the timeliness of the motion to intervene, "courts should take into account (a) the time elapsed since the inception of the action, (b) the probability of prejudice to those already party to the proceedings, (c) the purpose for which intervention is sought, and (d) the need for intervention as a means for preserving the putative intervenor's rights." *Wildearth Guardians v. Salazar*, 272 F.R.D. 4, 12 (D.D.C. 2010). Here, the motion to intervene was filed just over one month after Plaintiffs' complaint, and the parties have not yet filed dispositive motions. *See* Compl. (filed May 31, 2016); Mot. Intervene (filed July 6, 2016). Additionally, the motion to intervene is unopposed. *See* Pls.' Resp. 1; Defs.' Statement 1 n.1. On this record, there is no indication that the Pilots Associations' intervention will prejudice any of the parties involved, and the Court finds that their motion to intervene is timely. *See Roane*, 741 F.3d at 152 ("[I]n the absence of any indication that [the movant's] intervention would give rise to . . . prejudice, [the] motion was timely."); *see also Wildearth*, 272 F.R.D. at 14; *Karsner v. Lothian*, 532 F.3d 876, 886 (D.C. Cir. 2008).

With respect to the second requirement, the D.C. Circuit has explained that the "putative intervenor must have a 'legally protected' interest in the action." *Wildearth*, 272 F.R.D. at 12

---

standing." *Akiachak Native Cmty. v. Dep't of Interior*, 584 F. Supp. 2d 1, 7 (D.D.C. 2008) (citing *Roeder v. Islamic Republic of Iran*, 333 F.3d 228, 233 (D.C. Cir. 2003)); *see also Wildearth Guardians v. Salazar*, 272 F.R.D. 4, 13 n.5 (D.D.C. 2010) ("In most instances, the standing inquiry will fold into the underlying inquiry under Rule 24(a): generally speaking, when a putative intervenor has a 'legally protected' interest under Rule 24(a), it will also meet constitutional standing requirements, and *vice versa*.").

(quoting *Karsner*, 532 F.3d at 885). "The test operates in large part as a 'practical guide,' with the aim of disposing of disputes with as many concerned parties as may be compatible with efficiency and due process." *Id.* at 12–13 (quoting *United States v. Morten*, 730 F. Supp. 2d 11, 16 (D.D.C. 2010)).

Here, the Pilots Associations' member pilots undoubtedly have a substantial interest in the outcome of this litigation, because any reduction in the Coast Guard's 2016 pilotage rates will immediately affect their compensation. *See* Compl. ¶¶ 25, 62–72 (showing how pilotage rates and pilots' compensation are interrelated issues). Their interest in this case is thus legally protected: "little question" exists about a putative intervenor's legally protected interest when it is "an object of the action . . . at issue." *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 733–34 (D.C. Cir. 2003) (internal quotation marks omitted) (quoting *Sierra Club v. EPA*, 292 F.3d 895, 900 (D.C. Cir. 2002)); *cf. Foster v. Gueory,* 655 F.2d 1319, 1324 (D.C. Cir. 1981) ("An intervenor's interest is obvious when he asserts a claim to property that is the subject matter of the suit . . ."); *In re Endangered Species Act Section 4 Deadline Litig.*, 270 F.R.D. 1, 5 (D.D.C. 2010) (citing *Foster*).

And, given that the Pilots Associations' member pilots possess a legally protected interest in this litigation, the associations may assert their member pilots' interests on the pilots' behalf. An association has standing to sue on behalf of its members (and therefore a legally protected interest) when "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *United Food & Commercial Workers Union Local 751 v. Brown Grp., Inc.*, 517 U.S. 544, 553 (1996) (internal quotation mark omitted) (quoting *Hunt v. Wash. State Apple Advert. Comm'n*,

432 U.S. 333, 343 (1977)). As discussed above, the Pilots Associations' members would have standing to sue in their own right. Because the Pilots Associations are "voluntary association[s] of United States registered pilots [that] provide for efficient dispatching of vessels and rendering of pilotage services," *see* Mem. Supp. Mot. Intervene 2–3 (citing 46 U.S.C. § 9304(a); 46 C.F.R. § 401.300), and because the members' compensation in the form of pilotage rates may affect the number of qualified pilots who join the associations, *see* Compl. ¶¶ 73–75, preventing any reduction in the Coast Guard's 2016 pilotage rates is germane to the Pilots Associations' purpose. And given that the Pilots Associations do not at this time seek any affirmative relief on their member pilots' part, the record provides no indication that the pilots' participation (as opposed to the associations' participation) is required here. *Cf. Local 751*, 517 U.S. at 554–58 (explaining that, even when associations seek damages on behalf of their members, that fact does not prevent the associations from having standing to sue as a constitutional matter). The Court therefore finds that the Pilots Associations have a legally protected interest in this action and that they satisfy the second of the D.C. Circuit's intervention requirements.[5]

With respect to the third requirement, the action must threaten to impair the putative intervenor's proffered interest in the action. *Karsner*, 532 F.3d at 885. Here, as noted above, any reduction in the Coast Guard's 2016 pilotage rates will immediately affect the Pilots Associations' members' compensation. *See* Compl. ¶¶ 25, 62–72. Furthermore, Plaintiffs seek a reduction in the pilots' compensation even before any remand to the Coast Guard for reconsideration of its final rule. *See id.* at 21 (urging the Court to "[d]irect the Coast Guard to . . .

---

[5] Because the Court finds that the Pilots Associations have a legally protected interest in the action, the Court need not undertake a separate and redundant standing analysis. The Court therefore concludes that, because the Pilots Associations have a legally protected interest in this case under Federal Rule of Civil Procedure 24(a), they also have standing for purposes of Article III.

immediately [reduce] 2016 Great Lakes pilotage rates by 20.6 percent"). This litigation thus certainly threatens to impair the Pilots Associations' interest in preserving their members' current compensation.

Finally, with respect to the fourth requirement, the Pilots Associations have shown that the existing parties do not adequately represent their interests. The applicant's burden here is minimal, and it need only establish a possibility that its interests may not be adequately represented absent intervention. *See Fund for Animals*, 322 F.3d at 735. And, in cases like this one, the D.C. Circuit has often found that "governmental entities do not adequately represent the interests of aspiring intervenors" because the government's obligation "is to represent the interests of the American people." *Id.* at 735–36; *see also id.* at 736 n.9 (citing cases). The Pilots Associations' interest here, on the other hand, is to represent their member pilots' interest—a much narrower concern. Accordingly, even if the Coast Guard might at some point agree to accept some or all of Plaintiffs' demands in order to preserve the public fisc and to avoid further litigation, the Pilots Associations may not be so willing to compromise their member pilots' compensation. Indeed, Plaintiffs contemplate that very possibility when they ask the Court to specify "[t]hat any settlement discussions or agreement between Plaintiffs and the Coast Guard will not require [the Pilots Associations'] consent." Pls.' Resp. 3.

When it is "not hard to imagine how the interests of the [putative intervenor] and those of the [government] might diverge during the course of litigation," the Court may justifiably conclude that the government does not adequately represent the putative intervenor's interests. *Fund for Animals*, 322 F.3d at 736. In light of the Pilots Associations' and the Coast Guard's potentially divergent interests, the Court finds that the existing representation in this case would

not adequately assert the Pilots Associations' interest. The Pilots Associations therefore also satisfy the fourth requirement for intervention by right.

Because the Pilots Associations satisfy the requirements of Federal Rule of Civil Procedure 24(a), the Court must permit them to intervene and will grant their motion for intervention as a matter of right. *See* Mem. Supp. Mot. Intervene 3–10. Accordingly, the Court need not consider their alternative argument for permissive intervention. *See id.* at 10.

### B.  Conditions on Intervention

The Court now turns to the issue on which the parties' positions differ: whether the Court should impose conditions on the Pilots Associations' intervention. *See* Pls.' Resp. 5–8 (urging the Court to impose conditions); Defs.' Statement 2–3 (opposing at least one of Plaintiffs' three suggested conditions); Reply Supp. Mot. Intervene Supp. Defs. ("Reply") 2–8, ECF No. 13 (seeking intervention without limitation). "[E]ven where the Court concludes that intervention as a matter of right is appropriate, its inquiry is not necessarily at an end: district courts may impose appropriate conditions or restrictions upon the intervenor's participation in the action." *Wildearth Guardians v. Salazar*, 272 F.R.D. 4, 20 (D.D.C. 2010); *see also* Fed. R. Civ. P. 24(a) advisory committee's note to 1966 amendment ("An intervention of right under the amended rule may be subject to appropriate conditions or restrictions responsive among other things to the requirements of efficient conduct of the proceedings."). Here, Plaintiffs argue that the Court should limit the Pilots Associations' involvement in three ways:

(1) by limiting the Pilots Associations to arguments about "existing claims as outlined in the Complaint" and by barring them from "interject[ing] new claims or collateral issues";

(2) by specifying that "any settlement discussions or agreements between Plaintiffs and the Coast Guard will not require [the Pilots Associations'] consent"; and

(3) by declaring that "length limitations on filings shall be [calculated] on a per side basis."

Pls.' Resp. 3.

The Court acknowledges the prudential concerns that Plaintiffs raise. *See* Pls.' Resp. 4–5 (discussing the possibility that intervention will make this lawsuit "fruitlessly complex or unending"). But, the correct approach, in this Court's view, is to follow the general rule that "[i]n this circuit . . . . an intervenor participates on equal footing with the original parties to a suit," *United States v. Philip Morris USA Inc.*, 566 F.3d 1095, 1146 (D.C. Cir. 2009) (internal quotation mark omitted) (quoting *Bldg. & Constr. Trades Dep't, AFL–CIO v. Reich*, 40 F.3d 1275, 1282 (D.C. Cir. 1994)), with the exception being that the Court may impose restrictions on an intervenor that are "reasonable and … of a housekeeping nature." 7C Charles Alan Wright et al., *Federal Practice and Procedure* § 1922 (3d ed. 2016). As leading commentators note, "[i]t seems very doubtful . . . that the court has the right to make significant inroads on the standing of an intervenor of right; in particular, it should not be allowed to limit the intervenor in the assertion of counterclaims or other new claims." *Id.* (footnote omitted); *see also Beauregard, Inc. v. Sword Servs., LLC*, 107 F.3d 351, 352–53 (5th Cir. 1997) (noting "controversy" surrounding whether "reasonable conditions may be imposed even upon one who intervenes as of right"). Accordingly, "any conditions imposed should be designed to ensure the fair, efficacious, and prompt resolution of the litigation," while also being consistent with the "two conflicting goals of intervention: . . . 'to achieve judicial economies of scale by resolving related issues in a single lawsuit, and to prevent the single lawsuit from becoming fruitlessly complex or

unending.'" *Forest Cty. Potawatomi Cmty. v. United States*, No. 15-0105, 2016 WL 1465324, at *8 (D.D.C. Apr. 14, 2016) (quoting *Smuck v. Hobson*, 408 F.2d 175, 179 (D.C. Cir. 1969)). With these principles in mind, the Court addresses each of Plaintiffs' proposed limitations in turn.

First, the Court declines to require the Pilots Associations to "limit their arguments to existing claims as outlined in the Complaint" or to bar them from "interject[ing] new claims or collateral issues." Pl.'s Resp. 3. To be sure, courts in this district have done so with other intervenors in the past. *See, e.g.*, *Forest Cty. Potawatomi Cmty.*, 2016 WL 1465324, at *8–9; *Cty. of San Miguel v. MacDonald*, 244 F.R.D. 36, 48 n.17 (D.D.C. 2007); *Wildearth Guardians*, 272 F.R.D. at 20–21. But the Court pays heed to the principle that an intervenor as a matter of right "*must* be allowed" to assert any compulsory counterclaims. 7C Charles Alan Wright et al., *Federal Practice and Procedure* § 1921 (3d ed. 2016) (emphasis added); *see also id.* § 1921 n.11 (citing cases). *See generally* Fed. R. Civ. P. 13(a) (discussing compulsory counterclaims). After all, "the only difference between intervention of right and joinder is which party initiates the addition of a new party to the case." *Moore v. Rees*, No. 06-0022, 2007 WL 2955947, at *2 (E.D. Ky. Oct. 1, 2007); *accord Oreck Corp. v. Nat'l Super Serv. Co.*, No. 95-3738, 1996 WL 371929, at *1 (E.D. La. July 2, 1996); *N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 438 F. Supp. 440, 445 (E.D.N.Y. 1977).

Moreover, here, the Pilots Associations' proposed answer does not include any counterclaims or cross-claims. *See* Answer of Pilots Associations, ECF No. 6-3. And, given that this case centers on review of an administrative record under the APA, the Pilots Associations' ability to introduce collateral issues is limited. *See Nuclear Energy Inst., Inc. v. EPA*, 373 F.3d 1251, 1297 (D.C. Cir. 2004) ("[I]ssues not raised before an agency are waived and will not be

considered by a court on review."). The Court therefore sees no need to place an explicit restriction on the Pilots Associations' ability to raise additional claims or issues.

Second, though the Court agrees with the principle underlying Plaintiffs' proposed settlement-related condition, the Court declines to rule now on whether the Pilots Associations must be included or excluded from any settlement matters. On this issue, the Supreme Court has explicitly stated that, "while an intervenor is entitled to present evidence and have its objections heard at the hearings on whether to approve a consent decree [or a settlement], it does not have power to block the decree [or the settlement] merely by withholding its consent." *Local No. 93, Int'l Ass'n of Firefighters, AFL–CIO C.L.C. v. City of Cleveland*, 478 U.S. 501, 529 (1986); *see also San Juan Cty. v. United States*, 503 F.3d 1163, 1189 (10th Cir. 2007) ("[A]n intervenor has no power to veto a settlement by other parties."). But the Supreme Court has also cautioned that "parties who choose to resolve litigation through settlement . . . may not impose duties or obligations on a third party[] without that party's agreement," just as "a court may not enter a consent decree that imposes obligations on a party that did not consent to the decree." *Local No. 93*, 478 U.S. at 529. Because the Pilots Associations' inclusion or exclusion in settlement negotiations will largely depend on the terms of any potential agreement, the Court will not now specify "that any settlement between Plaintiffs and the Coast Guard does not require the [Pilots Associations'] participation, agreement, or consent." Pls.' Resp. 7.

Third, the Court also declines to impose page limitations on filings using a "per-side basis." *Id.* at 8. Although the Pilots Associations seek to intervene as defendants, they are not, practically speaking, "on the same 'side'" as the Coast Guard, as Defendants convincingly argue. Defs.' Statement 2. As discussed above, the Pilots Associations seek to represent a much narrower interest (their members' compensation) than the one the Coast Guard represents (the

public interest). *See supra* Part III.A. Indeed, the Pilots Associations take "the position that the rate set by the [Coast Guard's final rule] is, in fact, too low." Defs.' Statement 2; *see* Mem. Supp. Mot. Intervene 8 ("[T]he pilots believe that the rates should have been set higher, and that the Coast Guard improperly disallowed categories of expenses that should have been permitted."). In the spirit of allowing the Pilots Associations to adequately represent their interest in this case—which is distinct from Defendants' interest in this case—the Court will not require that the Pilots Associations and Defendants confine their filings to page limitations intended for just one party.

In sum, the Court will not impose any limitations on the Pilots Associations' participation in this case at this time. *Accord Wilderness Soc'y v. Babbitt*, 104 F. Supp. 2d 10, 18 (D.D.C. 2000). To the extent that Plaintiffs believe that the Pilots Associations are causing actual delays or other hardships as this litigation moves forward, they may raise such concerns then.

## IV.  CONCLUSION

For the foregoing reasons, the Pilots Associations' motion to intervene is hereby **GRANTED**.

It is **FURTHER ORDERED** that the caption in this case is amended to reflect the same.

It is **FURTHER ORDERED** that the Pilots Associations' proposed Answer, attached to its Motion to Intervene, is hereby accepted as filed. *See* ECF No. 6-3.

**SO ORDERED**.

Dated:  August 26, 2016                                                                RUDOLPH CONTRERAS
                                                                                                          United States District Judge